**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

SONYA R. BETSEY :
Plaintiff, :
:
v. : 3:09cv00293(WWE)
:
NISSAN MOTOR ACCEPTANCE :
CORP. & EQUIFAX INFORMATION :
SERVICES LLC, et al., :
Defendants. :

**MEMORANDUM OF DECISION ON PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIM OF NISSAN MOTOR ACCEPTANCE CORPORATION**

This lawsuit arises out of the alleged failure of defendants Nissan Motor Acceptance Corporation ("NMAC") and Equifax Information Services LLC to comport with certain notice, investigative and reporting requirements set forth in the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 et seq. ("FCRA"). Defendant NMAC[1] has asserted a counterclaim against plaintiff for a deficiency of $6,230.20 arising from plaintiff's default of payment under a finance contract. The payment or nonpayment of this deficiency resulted in the negative credit report at the heart of plaintiff's claims. Now pending is plaintiff's motion to dismiss NMAC's counterclaim for the deficiency. For the reasons set forth herein, plaintiff's motion will be denied.

**BACKGROUND**

For purposes of this motion, the facts alleged in defendant's counterclaim are taken as true. On or about October 17, 2005 Sonya R. Betsey ("Betsey") was a co-signor on an agreement for the purchase of a 2002 Nissan Altima with Harte Nissan

[1] For purposes of this ruling any reference to the defendant is intended to refer to NMAC, the party whose counterclaim is at issue.

Inc. (the "dealership"). Though Betsey was only the co-signor on the agreement and never possessed the vehicle, she agreed to remit to the dealership sixty monthly installment payments of $397.63 and granted the dealership a security interest in the purchased vehicle. The dealership assigned to NMAC its right, title and interest in the vehicle. Timely payment on the vehicle was not made and following a notice of default and intent to repossess, NMAC repossessed the vehicle. The vehicle was sold in a private sale and after all credits NMAC claims a deficiency against Betsey in the amount of $6,230.20.

Plaintiff alleges that she intended only to be a co-signor on the financing agreement for the vehicle but was given a blank contract to sign, which unbeknownst to her made her the sole obligor on the loan. A few months after signing the blank contract plaintiff received collection calls regarding payments owed to NMAC. Plaintiff, who never possessed the car, contacted NMAC's attorneys on February 14, 2008 to inform them that NMAC should remove any negative reporting to credit agencies given her position that she was not bound by the blank contract she had signed. Plaintiff's credit report reflected NMAC's negative reporting of the NMAC account as a bad debt, charged off and placed for collection. Plaintiff brings suit under the FCRA alleging that NMAC and Equifax had a duty to perform a reasonable investigation and to inform the consumer reporting agencies of the disputed debt. Plaintiff moves to dismiss NMAC's deficiency counterclaim.

## DISCUSSION

The function of a motion to dismiss is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." Ryder Energy Distribution v. Merrill Lynch Commodities, Inc., 748 F. 2d 774,

779 (2d Cir. 1984). When deciding a motion to dismiss, the Court must accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the pleader. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). A complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Conley v. Gibson, 355 U.S. 41, 45-46 (1957). These principles apply equally to consideration of a counterclaim.

In support of jurisdiction, defendant argues that the counterclaim is compulsory in that it arises out of the transaction or occurrence that is the subject matter of the plaintiff's claim, namely the financing of the vehicle and that no additional parties outside the court's jurisdiction are required. In the event that the Court finds that the counterclaim is permissive rather than compulsory, defendant argues that the Court should exercise supplemental jurisdiction over the permissive counterclaim. Plaintiff argues that NMAC's counterclaim should be dismissed because such counterclaim is a permissive counterclaim without independent basis for federal jurisdiction whose adjudication would substantially predominate over the claims brought by plaintiff.

Whether a counterclaim is compulsory or permissive turns on whether the counterclaim "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim". Jones v. Ford Motor Credit Co., 358 F.3d 205, 209 (2d. Cir. 2004). A claim is compulsory if "a logical relationship exists between the claim and the counterclaim and if the essential facts of the claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit." Critical-Vac Filtration Corp. v. Minutemen Intern., Inc., 233 F.3d 697, 699 (2d Cir. 2000).

Defendant's counterclaim for payment of an overdue debt is distinct from, and

not logically related to a plaintiff's claim based on improper credit reporting practices under the FCRA. See Jones v. Ford Motor Credit Co., 358 F.3d 205 (2d Cir. 2004); Leatherwood v. Universal Bus. Serv. Co., 115 F.R.D. 48, 49-50 (W.D.N.Y.1987). In Leatherwood, an individual consumer sued defendant for violations of the Fair Debt Collection Practices Act ("FDCPA") which prohibits debt collectors from engaging in abusive and/or deceptive practices. The defendant counterclaimed seeking payment on the underlying debt. The Court, rejecting the notion that the counterclaim was compulsory, explained that the

> counterclaim encompasses a private duty under state law and requires a broad proof of facts establishing the existence and performance of a contract, the validity of the contract's provisions, a breach of the contract by the plaintiff and monetary damages resulting from the breach. The claim and counterclaim are, of course, "offshoots" of the same basic transaction, but they do not represent the same basic controversy between the parties
>
> Leatherwood, 115 F.R.D. at 49.

The same is true of the facts at hand. Here, plaintiff brought an action under the FCRA which like the FDCPA is aimed at protecting consumers from unfair practices, in this case related to credit reporting. Although the counterclaim arises from the same business transaction which prompted the fair reporting obligations the issues are different and the evidence needed to support each claim is different. As such, the counterclaim is not compulsory.

The issue then is whether supplemental jurisdiction is available for defendant's counterclaim. In deciding whether to exercise jurisdiction over a permissive counterclaim under 28 U.S.C. § 1367 this Court must decide whether the claim shares "a common nucleus of operative fact" within the meaning of Article III. Here, defendant argues and plaintiff concedes that NMAC's counterclaim satisfies the

constitutional case standard. This Court agrees. As discussed supra, the counterclaim arises from the same business transaction that eventually led to plaintiff's complaint of unfair credit reporting.

Once the constitutional case standard of § 1367(a) is satisfied the Court must consider whether any of the four grounds set out in subsection 1367(c) are present to warrant the exercise of discretion to decline supplemental jurisdiction. Subsection 1367(c) provides :

> The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—
> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.
>
> 28 U.S.C. § 1367(c).

The Second Circuit has held that "where at least one of the subsection 1367(c) factors is applicable, a district court should not decline to exercise supplemental jurisdiction unless it also determines that doing so would not promote the values articulated in Gibbs, 383 U.S. at 726, 86 S.Ct. 1130: economy, convenience, fairness, and comity." Jones, 358 F.3d at 214.

Plaintiff maintains that this Court should decline to exercise supplemental jurisdiction pursuant to §§ 1367(c)(2) and (4). Plaintiff argues that NMAC's counterclaim will substantially predominate over the federal claim and that to permit the counterclaim to go forward would have a chilling effect on consumers who seek to enforce consumer protections provided by federal law.

Subsection 1367(c)(2) creates a limited exception which may be invoked only when "permitting litigation of all claims in the district court can accurately be described as allowing a federal tail to wag what is in substance a state dog." Luongo v. Nationwide Mut. Ins. Co., 1996 WL 445365, at *5 (S.D.N.Y. Aug. 7, 1996). This Court will consider "whether the state law claims are more complex or require more judicial resources to adjudicate or are more salient in the case as a whole than the federal law claims." Occunomix International LLC v. North Ocean Ventures, Inc., 2003 WL 22240660, at *1 (S.D.N.Y. Sept. 30, 2003).

Dismissal under subsection 1367(c)(2) is not appropriate because the state law claim to collect a debt will not substantially predominate over the federal claim. Plaintiff's claim under the FCRA will require fact finding on various issues, including NMAC and Equifax's investigations, plaintiff's financing contract with NMAC and the impact of NMAC and Equifax's failure to investigate on plaintiff's credit. By contrast, NMAC's lone counterclaim seeks to collect a deficiency. In fact, as NMAC has conceded, if plaintiff successfully proves that the contract with NMAC was unenforceable, dismissal of NMAC's counterclaim will necessarily result. In sum, while the enforceability of the contract is but a part of plaintiff's claim it is the crux of defendant's counterclaim.

Subsection 1367(c)(4) authorizes federal courts, upon the recognition of "exceptional circumstances", to decline supplemental jurisdiction. Courts outside our circuit have declined to exercise supplemental jurisdiction over counterclaims to collect a debt, citing chilling effect concerns. See e.g. Channell v. Citicorp Nat. Services, Inc., 1996 WL 563536 (N.D. Ill. Sept. 30, 1996) (on remand from the Seventh Circuit); Witt

v. Experian Information Solutions, Inc., 2008 WL 2489132 (E.D. Cal. June 16, 2008). In Witt, relied on by plaintiff, the Court stated that the FCRA serves a remedial purpose to correct credit reporting errors and that the threat of a debt collection case may quell attempts to assert rights under the statute. Witt, 2008 WL 2489132, at *5.

However, this Court is constrained by the Second Circuit's caution that "declining jurisdiction outside the ambit of 1367(c)(1)-(3) appears as the exception rather than the rule." Itar-Tass Russian News Agency v. Russian Kurier, Inc., 140 F.3d 442, 448 (2d Cir. 1998). In Jones, plaintiffs sued under the Equal Credit Opportunity Act alleging racial discrimination in certain financing plans and defendants counterclaimed seeking the amounts on plaintiffs' unpaid car loans. The Second Circuit reviewed the district court's dismissal of defendants' counterclaim and remanded to the district court. The Second Circuit directed the district court to Itar-Tass, underscoring that in "order to decline jurisdiction on this basis [1367(c)(4)] the Court should identify truly compelling circumstances that militate against exercising jurisdiction." Jones, 358 F.3d at 215.

Here, plaintiff's chilling effect argument is not compelling enough to satisfy this narrow exception. Consumers have a right to bring claims for violations of consumer protection statutes and creditors have a right to bring a collection action against debtors who default on a loan. The fact that the alleged debtor asserts claims under a consumer protection statute is of no consequence to the debtor's obligations to pay a debt if found by a court that such debtor owes the sums claimed. Therefore, any chilling effect is substantially weakened where as here the debt collector can pursue the deficiency claim against the plaintiff in a separate state court action.

For the foregoing reasons, plaintiff's motion to dismiss defendant's counterclaim [doc. # 19] is **DENIED**.

Dated at Bridgeport, Connecticut, this 10th day of September, 2009.

                                                /s/
                                Warren W. Eginton
                     Senior United States District Judge